**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

Rhode Island Truck Center, LLC,
Plaintiff,

v.

Daimler Trucks North America, LLC,
Defendant.

C.A. No. 22-297-JJM-LDA

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Chief Judge.

This case comes to the Court on Defendant Daimler Trucks North America, LLC's ("Daimler") removal from Rhode Island Superior Court, Providence County. *See* ECF No. 1. The state court case arose from Plaintiff Rhode Island Truck Center, LLC's ("RITC") challenge to a decision by the Rhode Island State Motor Vehicle Dealers' License and Hearing Board (the "Board") that it lacked authority to adjudicate RITC's protest. *See* ECF No. 3, Ex. A. Before the Court are cross-motions for summary judgment.[1] The Court GRANTS Daimler's Motion for Summary

[1] Daimler originally filed a motion to dismiss in this Court, and RITC's Response dealt with that motion as such. *See* ECF Nos. 6, 10. However, because the Court also has the state administrative record to consider, it entered a show cause order as to why consideration of the facts therefrom in addition to the parties' arguments should not enable the Court to treat these filings as cross-motions for summary judgment. Because neither party objected to the Court's show cause order, these motions will now be considered as cross-motions for summary judgment. *See* ECF Nos. 12, 13.

Judgment (ECF No. 6) and DENIES RITC's Motion for Summary Judgment (ECF No. 10).

## I. FACTS

RITC is a truck dealership in East Providence, RI that sells, in part, the Freightliner brand of trucks. ECF No. 3 at 25-26, Ex. B., ¶¶ 1, 8-9. Daimler, which manufactures the Freightliner brand, granted RITC a franchise to sell this brand in 2016. *Id.* at 50, Ex. C, ¶ 1. The franchise agreement defined a geographic territory—known as an area of responsibility ("AOR")—in which RITC would sell Freightliner brand trucks. *Id.* at 26, Ex. B., ¶ 10. In addition to various Rhode Island counties, RITC's AOR included Bristol County, MA. *Id.* In August of 2021, Daimler subsequently granted another truck dealership, Advantage Truck Group, LLC ("ATG"), a franchise in Bristol County, MA to sell the Freightliner brand. *Id.* at 51, Ex. C, ¶ 5. Daimler, however, did not give notice to RITC that it had granted this additional Freightliner franchise within RITC's AOR. *Id.*, ¶ 6.

RITC thus filed a protest with the Board. *Id.*, ¶ 7. It argued that Daimler had violated a Rhode Island statute that, *inter alia*, requires a manufacturer to give notice to an existing dealer when it grants another dealer a franchise for the same line or make of truck that the existing dealer sells within the existing dealer's AOR or within twenty miles of the existing dealer's location (hereinafter the "Dealer Law"). *Id.* at 51, 103, Ex. C, ¶ 7, Ex. 2, ¶ 26. RITC additionally alleged that Daimler acted in bad faith in violation of the statute by making misleading assurances. *Id.* at 27, 29, Ex. B, ¶¶ 20, 28. RITC asserted that Daimler assured RITC that Daimler would not grant

another Freightliner franchise within RITC's AOR. *Id.* at 27, Ex. B, ¶ 19. Further, RITC asserted that it was denied in bad faith a franchise for another truck brand, Western Star, that Daimler manufactures. *Id.* at 29, Ex. B, ¶ 27. Instead, Daimler granted ATG that same Western Star franchise for which RITC had applied. *Id.* at 27, Ex. B, ¶ 18. In support of this contention of bad faith, RITC cited to the facts that its sales met expectations, its customer reviews were satisfactory, and Bristol County did not contain enough business to justify two Freightliner dealerships. *Id.* at 28-29, Ex. B, ¶¶ 25-26.

The Board dismissed RITC's protest because it believed that it did not have authority to adjudicate the dispute. *Id.* at 54, Ex. C. The Board concluded that, because the underlying conduct took place in Massachusetts, adjudicating the protest using the Dealer Law would have the effect of applying Rhode Island state law extraterritorially in violation of the Commerce Clause of the Federal Constitution. *Id.* at 52-54. RITC subsequently filed a complaint in Rhode Island Superior Court. *See id.* at 25-30, Ex. B. The complaint sought to overturn the Board's dismissal of its protest and remand the case to the Board for consideration on the merits. *Id.* at 29, Ex. B, ¶¶ A-E. Daimler then removed the cased to Federal court and filed a motion to dismiss, which the Court now treats as a cross-motion for summary judgment. *See ante* at 1 & n.1.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995). As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.... '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (citations omitted) (internal quotation marks omitted).

Additionally, the moving party must be entitled to judgment as a matter of law. The moving party is "entitled to a judgment as a matter of law [if] the nonmoving

party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (citations omitted) (internal quotation marks omitted). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252 (alteration in original) (emphasis in original) (citations omitted) (internal quotation marks omitted).

## III. ANALYSIS

RITC's protest before the Board concerned three alleged statutory violations. ECF No. 3 at 25-26, Ex. B, ¶ 4. What gave rise to these alleged violations effectively involved two interactions. Daimler first denied RITC's application for a Western Star franchise, and then appointed another Freightliner franchise within RITC's AOR without first notifying RITC. *Id.* at 27-28, Ex. B, ¶¶ 16-22. The Board dismissed RITC's protest on jurisdictional grounds. *Id.* at 54, Ex. C, ¶ 1. It concluded that it "lacks the authority to apply the provisions of the Rhode Island dealer law in an extraterritorial manner and therefore cannot prohibit Respondent from establishing or moving a dealership outside the boundaries of this state." *Id.* at 54, Ex. C. Daimler now endorses this argument in support of its Motion for Summary Judgment. *See* ECF No. 6 at 1. In response, RITC makes three arguments in favor of the Board's authority to adjudicate this dispute. *See* ECF No. 10 at 7. First, RITC argues that the Board made a legal error in determining that adjudicating this dispute would require an extraterritorial application of Rhode Island law. *Id.* Second, RITC argues

that, even if an extraterritorial application of Rhode Island law was required, the Board still had authority to adjudicate this dispute. *Id.* Third, RITC argues that, even if the Board was correct on the first two issues, RITC still has a right to judicial review and adjudication of its claims that do not require the extraterritorial application of Rhode Island law. *Id.* The Court addresses each issue below.

**A. Adjudicating this Dispute Would Require the Extraterritorial Application of Rhode Island Law**

Both RITC and Daimler are entities to which the Dealer Law applies. *See* ECF No. 3 at 51, Ex. C. Both the relevant communications—or lack thereof—also were directed toward an entity (RITC) in Rhode Island. *Id.* at 27-28, Ex. B., ¶¶ 16-22. If there were no other facts, this case would be straightforward. The Board can clearly adjudicate the in-state conduct of entities that the Dealer Law covers. *See id.* at 51, Ex. C. However, there is a significant wrinkle because these interactions directly related to conduct that took place outside the state. *Id.* at 51, Ex. C, ¶ 5. While interactions of this nature between two parties do not necessarily give rise to the extraterritorial application of state law, these particular interactions directly affected out-of-state conduct (the sale of certain truck brands in Bristol County, MA). *Id.* Therefore, if the Board were to apply the Dealer Law to these interactions, that application would have *the effect* of extraterritorially regulating conduct in Massachusetts. *Healy v. Beer Inst., Inc.* 491 U.S. 324, 336 (1989). It is true, as RITC suggests, that a Rhode Island dealer should be able to avail itself of the Dealer Law's protections because it also must comply with the Dealer Law's burdens. *See* ECF No. 10 at 15 (citing *Fireside Nissan, Inc. v. Fanning*, 30 F.3d 206, 216 (1st Cir. 1994)).

However, these protections only go as far as the state's geographic borders. Additionally, just because the statute's language is not limited to the state's geographic borders does not necessarily mean that it should be read expansively. As the United States Court of Appeals for the First Circuit noted in *Fireside Nissan*, the Dealer Law

> does not have the purpose of discriminating against interstate commerce.... [The Dealer Law] is designed to regulate automobile dealerships in the state of Rhode Island.... Rhode Island's intent is *to protect Rhode Island consumers* and Rhode Island dealers from certain franchising practices of automobile manufacturers which are perceived as *harmful to the local community*."

*Id.* at 214 (citations omitted) (emphasis added). These primary objectives are not accomplished through the regulation of dealerships in Massachusetts. Moreover, even if the statute did explicitly cover conduct outside the state of Rhode Island, as RITC suggests, the statute would still be subject to the limits imposed by the Commerce Clause.

In response, RITC urges that the Dealer Law's application in this case is an ordinary instance "in which regulation of local matters may also operate as a regulation of commerce, requiring appraisal and accommodation of the competing demands of the state and national interests involved.... [And the Dealer Law] primarily regulates the conduct of dealers and manufacturers in Rhode Island, with only incidental effects elsewhere." ECF No. 15 at 5 (cleaned up). RITC finds support in a First Circuit decision that rejected a Commerce Clause challenge to a Maine law

that provided privacy protections for prescription drug information.[2] *See IMS Health Inc. v. Mills*, 616 F.3d 7, 30-31 (1st Cir. 2010), *rev'd on other grounds, IMS Health Inc. v. Schneider*, 564 U.S. 1051 (2011). In *Mills*, the First Circuit stated that the statute at issue differed from those that had been previously invalidated because the statute did not raise economic protectionism concerns, and it exclusively regulated in-state harm. *Id.* In reaching this result, the First Circuit noted that the Maine statute "does not regulate wholly extraterritorial commercial transactions. Its regulation of plaintiffs' use or sale of opted-in Maine prescribers' data affects only Maine prescribers and regulates transactions that impact Maine, with incidental effects elsewhere." *Id.* at 29. In this case, an in-state party allegedly harmed another in-state party. But, unlike in *Mills*, the harm here did not occur exclusively within the state of Rhode Island. In fact, there would be no claim in Rhode Island were it not for the underlying conduct that took place in Massachusetts. Accordingly, there was enough out-of-state activity in this case to merit scrutiny of Rhode Island's ability to regulate these parties' interactions.

### B. The Board Lacks Authority to Apply Rhode Island Law Extraterritorially

As RITC notes, the extraterritoriality doctrine does not prohibit all statutes that would have extraterritorial effects. *Id.* The United States Supreme Court has

---

2 Daimler makes a strong case that RITC's failure to raise this argument earlier should result in its being waived. *See* ECF No. 19 at 2-3. However, because the Court is granting Daimler's Motion for Summary Judgment, the waiver issue need not be decided. Instead, the Court assumes *arguendo* that RITC has not waived this argument for the purpose of providing a more thorough analysis on the Commerce Clause issue.

specifically found two categories of state statutes objectionable under the extraterritoriality doctrine. *Id.* at 30 (citations omitted). The first category relates to price affirmation statutes, which are not at issue here. *Id.* The second category relates to regulation of out-of-state firms by an in-state regulator. *Id.* As to the second category, the Supreme Court has held that "the Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *Healy*, 491 U.S. at 337 (citing *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 582 (1986)).

Yet, RITC is effectively asking the Court to enforce such a regime. Under RITC's position, Daimler would be required to answer to the Board (the equivalent of seeking regulatory approval from a Rhode Island regulator) for its decisions to grant or not grant franchises in Massachusetts. Every time Daimler wanted to interact with a dealer in Rhode Island, it would be required to consult and act in accordance with Rhode Island law, regardless of where the underlying conduct at issue would occur. Not only is such a scheme wholly impractical, but it violates states' inherent sovereignty to regulate conduct within their own borders. Consider a scenario in which Massachusetts made the policy choice to not impose requirements like the notice provision at issue here. Massachusetts could not effectuate this policy choice in certain cases involving dealers who operate in Rhode Island because the stricter Rhode Island law would still apply to these dealers regardless of where the underlying conduct occurred. Rhode Island would be "project[ing] its legislation" to

Massachusetts, which the Supreme Court has found violates the Commerce Clause. *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935).

In opposition, RITC appears to argue that the result of applying such logic to this case cannot be correct because a clear "'loophole'" forms whereby RITC has no avenue to seek redress for a statutory violation. ECF No. 10 at 20. In other words, even though interactions between Rhode Island entities in Rhode Island generate the predicate facts for a Rhode Island statutory violation, Rhode Island law somehow cannot apply. *Id.* That "loophole," however, is just the design of our constitutional system. It seems that the proper place to adjudicate this dispute would be a state forum in Massachusetts, the state where the relevant conduct occurred. Applying the same Commerce Clause analysis would likely show that Massachusetts could regulate the conduct with only incidental effects in Rhode Island. But even if Massachusetts law were to consider RITC an out-of-state dealer that could not avail itself of Massachusetts law's protections, such a scheme would likely be upheld under the First Circuit's reasoning in *Fireside Nissan*. *See Fireside Nissan*, 30 F.3d at 209 (holding that the Dealer Law does not discriminate against interstate commerce by barring out-of-state dealers from claiming its protections). As RITC highlights, it is true that state courts do rule on issues with out-of-state effects that might seem as large, if not larger, than those in this case. *See* ECF No. 10 at 12-13 (citing cases). However, all the cases to that effect that RITC cites fall within other areas of jurisprudence, and squarely outside the Commerce Clause line of cases that do apply to this case. Regardless of whether the jurisprudence seems anomalous, it is not the

role of the Court to delve into the mechanics of the system as they have been assembled by the Supreme Court and the First Circuit.

**C. RITC Possesses No Remaining Claims that the Board Can Constitutionally Adjudicate**

At the outset, it is not entirely clear what RITC means when it refers to its "remaining claims." *Id.* at 7. RITC first asserted a right to judicial review because its complaint constituted a timely filed administrative appeal of an agency's final order. *Id.* at 5-6. This argument is confusing on its face, especially because RITC suggested that the Court bypass the issue altogether and treat the parties' filings as appellate briefs. *See id.* In any event, because the Court now treats the filings as cross-motions for summary judgment, there is no need to address this argument. Moreover, because the Court agrees with the Board on the anterior constitutional issues, there would not even be a proper occasion to rule on the merits of the statutory claims. Any statutory right that RITC might claim to have found in Rhode Island's laws would thus run afoul of the Commerce Clause.

Aside from reformulations of its previous statutory claims, *see* ECF No. 6 at 7, RITC makes only one other discrete argument, *see* ECF No. 10 at 13. It argues that the Board "could award RITC damages based on [Daimler's] violation of the [Dealer Law], which would have no bearing on the operations of the competing dealership in Massachusetts." *Id.* This argument ignores the entire reasoning behind the Commerce Clause issue. It is exactly such an imposition of damages or a fine that would influence Daimler's conduct in Massachusetts. Imposing a monetary penalty—whether in the form of damages or a fine—on Daimler for conduct that took place in

Massachusetts would have the effect of regulating Daimler's business in Massachusetts. As discussed earlier, before Daimler could make decisions regarding a franchise in Massachusetts, it would first have to check if a Rhode Island dealer would be affected, and if so, comply with Rhode Island law to avoid a monetary penalty. Daimler has thus demonstrated that none of RITC's claims remains viable.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Daimler's Cross-Motion for Summary Judgment (ECF No. 6) and DENIES RITC's Cross-Motion for Summary Judgment (ECF No. 10).

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Chief Judge

October 24, 2022